UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EADDY, et al,<br><br>    Plaintiffs,<br><br>    v.<br><br>P.O. JEMIOLA, et al,<br><br>    Defendants. | No. 3:11-cv-1081 (MPS)<br>LEAD |

**RULING AND ORDER**

Plaintiffs Albert Eaddy and Lisa Eaddy bring this action against Defendants alleging violations of Section 1983 and Article I §§ 7, 9, and 20 of the Connecticut Constitution, and raising various state common law claims.  The claims arise out of the alleged pretextual stop of a vehicle without reasonable suspicion or probable cause in which Mr. Eaddy was a passenger and the subsequent alleged assault and battery of Mr. Eaddy by Defendant P.O. Jemiola, an officer of the New Haven Police Department ("NHPD") ("Eaddy").  Plaintiffs Lashunda Adkins and Ronda Adkins, the driver and a passenger in the same vehicle, bring a related case also claiming that the stop was pretextual in violation of Section 1983 and Article I §§ 7 and 9 of the Connecticut Constitution, and raising various state common law claims against the same Defendants ("Adkins").  In the interest of judicial economy, the cases were consolidated [doc. # 103].  Pending before this Court are a Motion to Dismiss the Third Amended Complaint in Eaddy [doc. # 100] and a Motion to Dismiss the First Amended Complaint in Adkins (the "Motions to Dismiss") [doc. # 102], filed under Fed. R. Civ. P. 12(b)(6) by Defendants New Haven Police Union, Local 530, and Council 15 of the American Federal of State, County and

Municipal Employees, AFL-CIP (the "Union Defendants'"). For the reasons that follow, the Court grants the Motions to Dismiss.

### The Allegations

Plaintiffs allege that on September 2, 2010, at approximately 2 a.m., Defendants Jemiola and Cacela stopped a car driven by Plaintiff Lashunda Adkins in which her sister, Plaintiff Ronda Adkins, and Plaintiff Albert Eaddy were passengers. (Third Am. Compl. in Eaddy ("Eaddy TAC") ¶ 22; Compl. in Adkins ("Adkins Compl.") ¶ 39.) Plaintiffs claim that the stop was pretextual, that the police officers did not have reasonable suspicion or probable cause to justify the stop, and that they were racially profiled and wrongfully stopped on the basis of their race or ethnicity. (Eaddy TAC ¶¶ 22-23, 29-30; Adkins Compl. ¶¶ 39, 45-46.)

In Eaddy, Plaintiffs further allege that once the police officers stopped the car, Mr. Eaddy fled and was subsequently apprehended by NHPD officers a few blocks from the location of the stop. (Second Am. Compl. in Eaddy ("Eaddy SAC") ¶ 26.)[1] After the officers had placed Mr. Eaddy in custody, Defendant Jemiola allegedly "struck Mr. Eaddy in the back of the head with a police baton, despite the fact that Mr. Eaddy offered absolutely no resistance." (Eaddy SAC ¶ 29.) Defendant Jemiola then "handcuffed Mr. Eaddy excessively tight, causing loss of circulation to his hands and numbness," and dragged him behind a nearby residence. (Eaddy SAC ¶ 30.) Behind the residence, Defendant Jemiola "delivered three more unlawful strikes to the back of Mr. Eaddy's head and neck with a police baton." (Eaddy SAC ¶ 32.) Immediately following the incident, Mr. Eaddy was allegedly denied access to medical care and treatment despite his repeated requests. (Eaddy SAC ¶¶ 33-40.) He subsequently "collapsed due to his

---

[1] There is no single operative complaint in either case, because there is no single complaint that sets forth all of the operative allegations. In Eaddy, the Third Amended Complaint, the most recent, incorporates by reference the allegations of the prior complaint, without restating them (see Eaddy TAC ¶ 4). The same is true with respect to the First Amended Complaint and the original complaint in Adkins. (See First Amended Complaint in Adkins ¶ 1.)

injuries" and was taken to Yale-New Haven Hospital, where he was treated for a "broken vertebra, a crushed vertebra, nerve damage, and severe pain." (Eaddy SAC ¶ 43.)

With respect to the Union Defendants, Plaintiffs allege that on November 15, 2004 – almost six years before the events of September 2, 2010 – the Defendant City of New Haven (the "City") and the Union Defendants entered into a written collective bargaining agreement effective from July 1, 2004 through June 30, 2008 ("Agreement 1"). (Eaddy SAC ¶ 15; Adkins Compl. ¶ 27.) The City and the Union Defendants "intentionally omitted the creation and use of a formal, written performance evaluation system ("PES") from said agreement." (Eaddy SAC ¶ 16; Adkins Compl. ¶ 28.)

According to the allegations, the City subsequently hired the Police Executive Research Forum ("PERF"), a private not-for-profit organization, to conduct an "objective and comprehensive study of specific areas within the NHPD," following a bribery scandal in 2007 involving two members of the NHPD Narcotic Squad. (Eaddy SAC ¶ 18; Adkins Compl. ¶ 30.) In November 2007, the PERF issued a final report recommending, in part, that the NHPD "implement a formal, written performance evaluation system to reward superior performance, address substandard performance and to hold personnel accountable for their past performance." (Eaddy SAC ¶ 19; Adkins Compl. ¶ 31.)

On November 17, 2009, the City and the Union Defendants entered into a written collective bargaining agreement effective from July 1, 2008, through June 30, 2011 ("Agreement 2"). (Eaddy SAC ¶ 20; Adkins Compl. ¶ 32.) Despite the findings of the PERF final report, the City and the Union Defendants "intentionally omitted the creation and use of a PES from said agreement." (Eaddy SAC ¶ 21; Adkins Compl. ¶ 33.)

According to the allegations, since at least July 1, 2004, the NHPD has had no formal evaluation system "beyond day-to-day review of its sworn uniformed employees' on the job activities." (Eaddy SAC ¶ 23; Adkins Compl. ¶ 35.)  Plaintiffs allege that "by formally agreeing to the lack of a PES," the City and the Union Defendants "created a policy, custom or practice of deliberate indifference to the training, supervision, and disciplinary needs of its police officers" and "created an environment in which even the most junior members of the NHPD felt free to submit fraudulent police reports and issue baseless citations for violations of statutes . . . ."  (Eaddy SAC ¶ 24; TAC ¶ 33; Adkins Compl. ¶¶ 36, 49.)  Plaintiffs claim that had the City and the Union Defendants implemented a formal PES, their injuries would not have occurred.  (Eaddy SAC ¶ 55; Adkins Compl. ¶ 50.)

### The Union Defendants' Motions to Dismiss

The Union Defendants' move to dismiss the operative complaints in both cases on the following grounds:  (1) the Union Defendants are not state actors, and the operative complaints do not plead sufficient facts to show that the Union Defendants conspired with a state actor to violate the Plaintiffs' constitutional rights; and (2) the Union Defendants owed no legal duty to the Plaintiffs sufficient to sustain the common law claims.  For the following reasons, the Court agrees with the Union Defendants on both grounds and grants the Motions to Dismiss.

### Rule 12(b)(6)

The function of a Rule 12(b)(6) motion to dismiss is to determine whether the plaintiff has stated a legally cognizable claim that, if proven, would entitle her to relief.  In making that determination, the Court accepts as true all factual allegations in the complaint and draws all inferences from these allegations in the light most favorable to the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. Twombly, 550 U.S. at 556.

### State Action

To state a claim under Section 1983 or the Connecticut Constitution, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); Cologne v. Westfarms Assocs., 192 Conn. 48, 61-62 (1984); Talton v. Un. Techs. Corp., No. 3:07-cv-00766 (PCD), 2007 U.S. Dist. LEXIS 87247, at *4-5 (D. Conn. 2007) (citations omitted). In general, a labor union is not a state actor, and Plaintiffs do not appear to argue otherwise. See, e.g., Ciambriello, 292 F.3d at 323; McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am., 107 F. Supp. 2d 311, 316 (S.D.N.Y. 2000); Marrero v. City of New York, No. 02 Civ. 6634 (DLC), 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003). Rather, Plaintiffs argue that the Union Defendants acted under color of state law by conspiring with the City to violate Plaintiffs' constitutional rights. A private entity may be liable under Section 1983 or the Connecticut Constitution if the private entity "is a willful participant in joint activity with the State or its agents." United States v. Price, 383 U.S. 787, 794 (1966); Talton, 2007 U.S. Dist. LEXIS 87247, at *5-6. A conclusory allegation that a private actor acted in concert with a state actor, however, is insufficient to state a constitutional claim against the private actor. Ciambriello, 292 F.3d at 324 (citing Spears, 954 F.2d at 68); see also Kasper v. City of Middletown, 352 F. Supp. 2d 216, 236 (D. Conn. 2005).

Here, the operative complaints fail to allege that the City engaged in a conspiracy with the Union Defendants. Plaintiffs allege only that the City and the Union Defendants engaged in collective bargaining negotiations, that they entered into Agreements 1 and 2, and that the City and the Union Defendants "intentionally omitted" a written PES from the terms of those Agreements. (Eaddy SAC ¶¶ 15-16, 20-22; Adkins Compl. ¶¶ 27-28, 32-33.) These allegations are insufficient to plead a conspiracy. In collective bargaining negotiations, the Union Defendants have a duty to represent the interests of their members and to provide fair representation to those members. See Conn. Gen. Stat. §§ 7-468, 7-470 (2012). During negotiations, the Union Defendants have an adversarial relationship with the City. The allegation that, as a result of negotiations, an agreement was reached that did not include the adoption of a policy that, according to Plaintiffs, would have operated to prevent the harm they allegedly incurred, is not enough to plead that the Union Defendants conspired with their adversary. See, e.g., Ciambriello, 292 F.3d at 324 (finding that plaintiff's "conclusory allegations of conspiracy ring especially hollow in light of the adversarial relationship between the County and [defendant union]"); McGovern, 107 F. Supp. 2d at 317 (reasoning that union defendant's "only 'collaboration' with the County arose from the negotiation of an agreement for the bargaining unit," "[m]ere negotiation in the course of completing a collective bargaining agreement does not rise to the level of an improper conspiracy," and "[i]n fact, the Union's role in relation to the County was adversarial."); Kasper, 352 F. Supp. 2d 216, 236 (D. Conn. 2005) (finding that "[w]hen a union represents city employees in contract negotiations, . . . it is considered to be acting adversely to the city government and not acting under color of state law.").

Further, there is no allegation that the Union Defendants conspired with the City to engage in conduct *that itself* violated Plaintiffs' constitutional rights. Ciambriello, 292 F.3d at 324 ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to *commit an unconstitutional act*.") (emphasis added); see Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) (finding state action where private defendants bribed a judge to enjoin the production of minerals from certain oil leases owned by plaintiffs, which allegedly deprived plaintiffs of their property without due process of law under Section 1983); Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 880-81 (2d Cir. 1988) (finding state action where private police association was alleged to have hired private investigators and placed plaintiff under surveillance – "with the knowledge and express or implied consent of the police department" – which conduct was in violation of his constitutional rights). Here, the operative Complaints simply allege that the Union Defendants and the City agreed not to adopt a written PES. The failure to adopt such a system did not itself violate the Plaintiffs' constitutional rights. Indeed, the Plaintiffs have not alleged that the City was under any duty to adopt such a system and the Court is unaware of any authority to suggest that it was. The unconstitutional acts alleged in the Complaints concern the racial profiling and assault and battery of Plaintiffs by Defendant police officers. There are no allegations that the Union Defendants had any involvement in this alleged conduct.

Because Plaintiffs have failed to allege the element of state action to support their claims against the Union Defendants, their claims for violations of the federal and state Constitutions fail as a matter of law.

**Common Law Duty**

The Union Defendants argue that the Plaintiffs' common law claims of negligence and recklessness fail because the Union Defendants owed no duty of care to Plaintiffs. Whether a duty exists between individuals is a question of law for the court. Jaworski v. Kiernan, 241 Conn. 399, 404 (1997). The test for determining whether a legal duty exists requires:

> (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or the particular plaintiff in the case.

Murdock v. Croughwell, 268 Conn. 559, 566 (2004). The first prong addresses foreseeability, a necessary component of duty, but that determination does not end the inquiry. See, e.g., Waters v. Autuori, 236 Conn. 820, 827 (1996); RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 385-86 (1994). As the Connecticut Supreme Court has held,

> Many harms are literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the rippling of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.

Waters, 236 Conn. at 827-28 (quoting RK Constructors, 236 Conn. at 386). "The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." RK Constructors, Inc., 231 Conn. at 386. (internal quotation marks and citations omitted).

The Court concludes that the allegations in the operative Complaints fail to establish that the Union Defendants owed a duty of care to Plaintiffs. First, an "ordinary person in the [Union's] position," Murdock, 268 Conn. at 566, would not anticipate that a position it took

8

during collective bargaining negotiations against adoption of a written personnel procedure would result in third parties' suffering racial discrimination and police brutality as alleged in the complaints. While it may be that, as the Complaints allege, adopting a written performance evaluation system for police officers is a better practice, it is simply not a naturally foreseeable consequence that the use of an oral review system, as opposed to a written system, will lead officers to inflict flagrant violations of constitutional rights on ordinary citizens. Second, even assuming Plaintiffs' injuries were foreseeable, public policy would weigh against imposing a duty on the Union Defendants under the circumstances of this case. As detailed above, in the collective bargaining process, the Union Defendants owe a statutory duty of fair representation to their members, not a duty to the general public. See Conn. Gen. Stat. §§ 7-468, 7-470. Indeed, as the Union Defendants point out in their briefs, the public is deemed to be an adversary to the union in the negotiation and arbitration process. See Conn. Gen. Stat. § 7-473c. To impose a duty on the Union Defendants here would create a clear conflict of interest and run contrary to these statutory mandates. Moreover, as discussed above, the Plaintiffs fail to allege that the City itself had any duty to adopt a written PES for the NHPD. Surely, then, the Union Defendants could not have owed the Plaintiffs a duty to require the City to do something it was not otherwise required to do – especially when such a duty would have conflicted with their duties to their own members.

     Because Plaintiffs have failed to allege adequately that the Union Defendants owed a duty to Plaintiffs – an essential element of their recklessness and negligence claims -- those claims fail as a matter of law and must be dismissed.

**Conclusion**

For all the foregoing reasons, the Union Defendants' Motions to Dismiss [doc. # 100 and # 102] are hereby GRANTED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         February 5, 2013